NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 54

No. 22-AP-022

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Criminal Division |
| | |
| Dean Jeffrey Stearns | September Term, 2022 |

Elizabeth D. Mann, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **EATON, J.** Defendant Dean Jeffrey Stearns appeals the trial court's denial of his motion for sentence reconsideration. We affirm.

¶ 2. This case has been on appeal here twice previously. In December 2018, defendant pleaded guilty to five counts of voyeurism and two counts of promoting a recording of sexual conduct. See 13 V.S.A. §§ 2605, 2824. In January 2020, he was sentenced to an aggregate term of ten to fifteen years' imprisonment, suspended except five years to serve. Defendant appealed in February 2020, but later filed a motion to dismiss the appeal, which this Court granted in August 2020.

¶ 3.     Defendant then moved for sentence reconsideration in the trial court under 13 V.S.A. § 7042(a) and Vermont Rule of Criminal Procedure 35(b).  The court initially dismissed the motion as untimely, and defendant challenged that decision on appeal.  We reversed and remanded for the trial court to consider the motion on its merits.  State v. Stearns, 2021 VT 48, ¶ 14, __ Vt. __, 260 A.3d 368.

¶ 4.     The trial court held a hearing on remand in January 2022.  The motion sought sentence reconsideration based on the restrictive conditions imposed in defendant's correctional facility because of the COVID-19 pandemic.  The court denied the motion on the record.  It noted that the sentence imposed was within the range agreed to by the parties in their sentencing agreement.  The court stated that it had established the sentence with "full consideration of the unique facts and circumstances" of defendant's conduct, which involved an extreme abuse of a position of trust and victimized young girls.  The court did not reach the question of whether and to what extent COVID-19 existed and was understood at the time of sentencing, but it concluded that in light of the evidence defendant had presented, there was no basis to reduce his sentence. Although the court found that defendant had experienced far more restrictive conditions in his incarceration due to the pandemic, it noted that these restrictions mirrored the significant restrictions that had become part of everyone's daily lives since March of 2020.  Beginning at that time, everyone had been forced to live with issues of isolation as well as limitations on access to family, activities, and services including medical care.  The court found that defendant had been vaccinated and boosted against COVID-19, was receiving all required medical care, and had not suffered any personal ailments or injuries because of the pandemic or the conditions within the correctional facility.  It concluded that defendant had not presented any evidence to establish circumstances unique to his incarceration that warranted special consideration.  In denying defendant's motion, the court explained that its decision did not preclude defendant from seeking habeas corpus or other relief as may be appropriate.

¶ 5. On appeal, defendant challenges the trial court's ruling for three reasons. He argues that the trial court abused its discretion by: failing to apply individualized sentencing factors, not considering how changes to incarceration conditions during the pandemic adversely affected the ability to achieve sentencing goals, and upholding a sentence that had been effectively increased due to pandemic-era restrictions. The State contends, among other things, that defendant's motion for sentence reconsideration was properly denied because sentence reconsideration does not include review of post-incarceration matters and defendant sought relief based on post-incarceration circumstances. We agree with the State and affirm primarily on that basis. See State v. Lafountain, 160 Vt. 313, 316, 628 A.2d 1243, 1245 (1993) (explaining that this Court is not bound by reasoning of trial court and may affirm on different legal grounds).

¶ 6. "We review the denial of the motion for sentence reconsideration for abuse of discretion." State v. King, 2007 VT 124, ¶ 6, 183 Vt. 539, 944 A.2d 224 (mem.). Section 7042 of Title 13 provides broadly that "[a]ny court imposing a sentence . . . may upon its own initiative or motion of the defendant, reduce the sentence." 13 V.S.A. § 7042(a). Criminal Rule 35, which implements § 7042(a), contains virtually identical language. See V.R.Cr.P. 35(b) ("The court, on its own initiative or on motion of the defendant, may reduce a sentence . . . ."). We have interpreted this statutory provision to give the trial court broad discretion to determine which factors to consider during sentence reconsideration. State v. Dean, 148 Vt. 510, 513, 536 A.2d 909, 912 (1987), abrogated on other grounds by Betterman v. Montana, 578 U.S. 437 (2016). However, "[i]t is well established that sentence reconsideration pursuant to 13 V.S.A. § 7042 is not intended to address post-incarceration matters." State v. Sodaro, 2005 VT 67, ¶ 9, 178 Vt. 602, 878 A.2d 301 (mem.) (citing State v. LaPine, 148 Vt. 14, 15, 527 A.2d 1150, 1150 (1987) (per curiam)); see also King, 2007 VT 124, ¶ 6 ("[Sentence reconsideration] is not intended as a forum to review post-incarceration circumstances or events."). Instead, "the statute's purpose is to give the [superior] court an opportunity to consider anew 'the circumstances and factors present

3

at the time of the original sentencing.' " Sodaro, 2005 VT 67, ¶ 9 (quoting LaPine, 148 Vt. at 15, 527 A.2d at 1150). We have repeatedly reaffirmed this principle. See State v. Roy, 154 Vt. 645, 645, 573 A.2d 698, 698 (1990) (declining to overrule LaPine's holding regarding scope of sentence reconsideration); State v. Richardson, 161 Vt. 613, 613, 640 A.2d 24, 25 (1994) (mem.) (same).

¶ 7. For the first time in his reply brief, defendant raises several arguments that sentencing reconsideration includes post-incarceration circumstances. Generally we do not consider arguments raised for the first time in a reply brief, but in any event, we are not persuaded by their merits. Defendant first contends that the plain language of 13 V.S.A. § 7042(a) and Criminal Rule 35(b)—providing that a court "may reduce a sentence"—does not limit the basis for a court to grant sentence reduction. However, this plain language also does not expressly allow for consideration of post-incarceration facts, leaving ambiguity as to its scope. While "[w]e look first to the plain language of the statute, . . . if this is insufficient to determine legislative intent, we consider the broad subject matter of the statute, its effects and consequences, and the purpose and spirit of the law." Severson v. City of Burlington, 2019 VT 41, ¶ 11, 210 Vt. 365, 215 A.3d 102 (quotation omitted). As we explained in LaPine:

> The purpose of reconsideration under § 7042 "is to permit the trial judge to reconsider the sentencing decision absent the heat of trial pressures and in calm reflection . . . ." State v. Therrien, 140 Vt. 625, 627, 442 A.2d 1299, 1301 (1982). Implicit in Therrien and the statute itself is the assumption that under consideration will be the circumstances and factors present at the time of the original sentencing, rather than [the] defendant's conduct and behavior since sentencing.

148 Vt. at 14-15, 527 A.2d at 1150.

¶ 8. This conclusion is bolstered by our decision in State v. Martinsen, 156 Vt. 643, 590 A.2d 885 (1991) (mem.). In Martinsen, the defendant argued that his sentence turned out to be longer than anticipated by the sentencing judge and therefore it should be reduced. We rejected this contention, explaining that "[t]he actual length of [the] defendant's incarceration was

4

dependent in part on how the corrections department exercised its discretion in classifying him and placing him in rehabilitative programming," and that these decisions were within the discretion of the Department of Corrections (DOC), not the sentencing judge. Id. at 644, 590 A.2d at 886. We affirmed because sentencing reconsideration "is an inquiry into the understanding of the sentencing judge at the time of sentencing" and the "defendant failed to show that the sentencing judge acted under a mistake as to the effect of the sentence upon [the] defendant's incarceration." Id. at 643-44, 590 A.2d at 886; see also State v. Passino, 168 Vt. 634, 725 A.2d 300 (1998) (mem.) (explaining that trial judge's recommendations regarding conditions of confinement at sentencing were "not, strictly speaking, part of defendant's sentence" because "an inmate's particular right or status within an institution is a matter within the broad discretion of prison authorities" (quotation omitted)). Likewise, the restrictive conditions in defendant's correctional facility were not within the sentencing judge's knowledge or control in this case, and thus were not appropriate considerations on defendant's § 7042(a) motion.

¶ 9. Defendant next contends that Criminal Rule 35(b), independent of 13 V.S.A. § 7042, allows for consideration of post-incarceration matters. Defendant cites the Reporter's Notes from 1981, which state that Criminal Rule 35(b) tracks the language of § 7042 and includes additional language from Federal Rule of Criminal Procedure 35. Reporter's Notes, V.R.Cr.P. 35. The Reporter's Notes state further that as of 1981, Vermont's sentence-reconsideration statute had not yet been authoritatively construed, so the scope of the authorization was not fully known, but Federal Rule 35 had been interpreted as authorizing a request for leniency. Id. (citing United States v. Ellenbogen, 390 F.2d 537 (2d Cir. 1968)). Following the publication of these Reporter's Notes, we definitively construed the scope of § 7042, see LaPine, 148 Vt. at 14-15, 527 A.2d at 1150, and since then we have consistently held that post-incarceration circumstances are not to be considered under the statute—in other words, that it is not intended as a vehicle to seek leniency. The relevant operative language of Criminal Rule 35(b) tracks the language of 13 V.S.A. § 7042(a) almost

exactly and we have never interpreted one to sweep more broadly than the other. Moreover, to the extent that Federal Criminal Rule 35 had any bearing on Vermont Criminal Rule 35(b) historically, the federal provision was amended following the Sentencing Reform Act of 1984 to eliminate post-sentencing evidence as a possible basis for sentence reduction. See Reporter's Notes, 1991 Amendments, F.R.Cr.P. 35 (discussing narrow scope of rule following Sentencing Reform Act and explaining that rules committee rejected proposal to permit modification of sentence "based upon new factual information not known to the defendant at the time of sentencing" because "the ability of the defendant (and perhaps the government) to come forward with new evidence would be a significant step toward returning Rule 35 to its former state"). We see no basis to interpret Vermont Rule of Criminal Procedure 35(b) differently than 13 V.S.A. § 7042(a) in this case.

¶ 10.    Finally, defendant argues that our case law interprets § 7042(a) as allowing consideration of post-incarceration matters. He misconstrues our decisions. Defendant takes out of context our statement in Therrien that the trial court must ensure a sentence "is correct, fair, and serves the ends of justice." 140 Vt. at 627, 442 A.2d at 1301. He claims that the trial court recognized the harsh conditions of his imprisonment, and that these conditions rendered his sentence no longer fair or just. But nowhere in Therrien did we suggest that the inquiry under § 7042(a) includes examination of circumstances occurring after sentencing. Quite the opposite, we explained that the purpose of sentencing reconsideration is for the judge to reflect on the decision that the judge made at the time of sentencing absent the heat of trial pressures. Id. Similarly, defendant argues that because we have characterized sentencing reconsideration as having an "equitable purpose," Stearns, 2021 VT 48, ¶ 9, we thereby interpreted § 7042(a) to include post-incarceration matters. We suggested no such interpretation. An equitable inquiry may still have a temporal limit, and that is how we have construed § 7042(a) at least since LaPine.

¶ 11.    Having confirmed the scope of sentencing reconsideration, we now turn to the substance of defendant's motion. Defendant's motion for sentence reconsideration was based

6

almost entirely on how pandemic-era restrictions impacted his incarceration. Although the trial court did not make a factual finding as to whether COVID-19 existed at the time it sentenced defendant, it found, and defendant does not dispute, that governmental restrictions due to COVID-19 first began in March 2020, some two months after defendant's sentencing. This distinction is important because his motion was not based on the symptoms or bodily effects of the disease itself. Indeed, defendant does not contest the trial court's findings that he was vaccinated and boosted against COVID-19, was receiving all required medical care, and had not suffered any personal ailments or injuries because of the pandemic or the conditions within the correctional facility. Nor does he argue that the trial court erred by failing to foresee at the time of sentencing how COVID-19 might affect life within prisons. Defendant focuses instead on the restrictive safety measures imposed by the DOC within his correctional facility after he was incarcerated. Cf. Sodaro, 2005 VT 67, ¶ 9 ("In this case, defendant grounded his motion on post-sentencing circumstances rather than some misapprehension by the court of the circumstances that existed in July 2003 when it sentenced defendant."). Insofar as defendant's motion was based on these post-incarceration matters, he presented no possible basis for reducing his sentence under 13 V.S.A. § 7042, so we affirm the trial court's decision denying reconsideration. Given this conclusion, we do not reach defendant's arguments that the trial court erroneously failed to consider how changed conditions of confinement during the pandemic adversely affected sentencing goals and that these changed conditions amounted to an unlawful increase in his sentence.*

¶ 12. Defendant's only argument that does not rely entirely on post-incarceration circumstances is that the trial court erred by not accounting for his mitigating factors during sentence reconsideration. He asserts that the trial court should have reweighed all the 13 V.S.A. § 7030(a) factors, including revisiting its findings regarding his history, character, need for

---

* Nothing in our decision today prevents defendant from pursuing other relief mechanisms that may be appropriate to challenge the conditions of his incarceration.

treatment and programming, and risk to himself and the community. Although the court must consider all of the § 7030(a) factors when imposing a sentence, State v. Lumumba, 2014 VT 85, ¶ 23, 197 Vt. 315, 104 A.3d 627, sentencing reconsideration under § 7042(a) has a different scope. The purpose of a § 7042(a) motion is to allow the trial court to reflect on whether the initial sentence is "unwise or unjust" while considering "such factors as it believes are relevant." Dean, 148 Vt. at 513, 536 A.2d at 912 (quotation omitted). The trial court has "wide discretion" in determining which factors are relevant. Id. Although in some cases sentencing reconsideration may entail revisiting all of the § 7030(a) factors, we cannot say that a wholesale review will be required in all or most cases. Indeed, we have held that it is appropriate under some circumstances for a trial court to deny a motion for sentence reconsideration without a hearing. See State v. Allen, 145 Vt. 393, 395-96, 488 A.2d 775, 777 (1985) (where sentence was within statutory range and trial court held lengthy sentencing hearing); King, 2007 VT 124, ¶ 8 (where only argument raised was conclusory allegation that trial pressure influenced sentencing and sentence was pursuant to plea agreement). And where, as here, the sentence was imposed pursuant to a plea agreement, "sentence reconsideration is of limited utility." King, 2007 VT 124, ¶ 6.

¶ 13. Defendant did not identify below, nor does he assert on appeal, any specific error in the court's original weighing of the sentencing factors. Thus, defendant provided no reason for the court to reconsider how it had analyzed the sentencing factors. He instead concentrated almost entirely on the restrictive measures imposed within his correctional facility after he was incarcerated, which naturally became the focus of the court's decision. Apart from issues related to COVID-19, the trial court acknowledged that defendant's sentence was based on a plea agreement, recited the underlying facts of defendant's criminal activity, and stated that the sentence was not "established lightly or without full consideration of the unique facts and circumstances presented by the conduct" at issue. Although the court did not comment explicitly on the mitigating factors that defendant mentioned, the sentence was within the statutory limits

and defendant does not suggest it was based on improper or inaccurate information. See Lumumba, 2014 VT 85, ¶ 22 ("Absent exceptional circumstances, we will defer to the court's judgment so long as the sentence is within the statutory limits and was not based on improper or inaccurate information." (quotation omitted)). Given all of these circumstances, we conclude that the trial court acted within its discretion in denying defendant's motion for sentence reconsideration without revisiting defendant's mitigating factors.

Affirmed.

FOR THE COURT:

_____

Associate Justice